UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TINA C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-308 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Tina C., on April 10, 2020. For the following reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED.**

*Background*

The plaintiff, Tina C., filed an application for a Title II period of Disability and Disability Insurance Benefits on December 15, 2016, alleging a disability onset date of June 7, 2015. (Tr. 16). The claim was denied initially on March 28, 2017, and upon reconsideration on October 6, 2017. (Tr. 16). On November 14, 2017, Tina C. filed a written request for a hearing pursuant to 20 CFR § 404.929. (Tr. 16). The hearing was held on August 15, 2018, before Administrative Law Judge Genevieve Adamo. (Tr. 16). Vocational Expert (VE) Amy Foster appeared at the hearing via telephone. (Tr. 16). On December 20, 2018, the ALJ issued an unfavorable decision. (Tr. 16-31). Tina C. filed a request for review by the Appeals Council, which was denied on February 10, 2020. (Tr. 1-7). Tina C. then filed this petition for judicial review on April 10,

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

2020.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Tina C. had not engaged in substantial gainful activity since June 7, 2015, the alleged onset date. (Tr. 19).

At step two, the ALJ determined that Tina C. had the following severe impairments: impingement syndrome and bursitis of the left shoulder; chondromalacia of the patella of the left knee status post arthroscopic patellar debridement with lateral release; history of right shoulder arthroscopy and rotator cuff repair; migraines; C4-5 facet arthropathy; bipolar disorder; anxiety; lumbar degenerative disc disease; and obesity. (Tr. 19). The ALJ found that Tina C.'s severe impairments significantly limited her ability to perform basic work activities. (Tr. 19). The ALJ also found that Tina C. had the nonsevere impairments of sleep apnea; restless leg syndrome; wrist tendonitis; tennis elbow; arthritis of the fingers; and chronic pain syndrome. (Tr. 19).

At step three, the ALJ concluded that Tina C. did not have a physical impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ considered whether the severity of Tina C.'s mental impairments met or medically equaled the criteria of Listings 1.02, 1.04, 12.08, or 112.15. (Tr. 21). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves.

(Tr. 21-22). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while

an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 22). The ALJ found that Tina C. had a moderate limitation in understanding, remembering, or applying information; a moderate limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a mild limitation adapting or managing herself. (Tr. 22). Because Tina C.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria were not satisfied. (Tr. 23).

After consideration of the entire record, the ALJ then assessed Tina C.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she has additional limitations. The claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can tolerate an environment with moderate noise or less. She cannot work at unprotected heights. She can tolerate occasional exposure to vibrations. She can tolerate frequent exposure to extreme heat and cold, humidity, fumes, odors, dusts, gases, and poor ventilation. The claimant can frequently finger, handle, and reach. She can carry out and remember simple, routine, and repetitive tasks with no production rate pace like assembly line work with only occasional simple work-related decision-making. The claimant can maintain attention and concentration for two-hour intervals. She can respond appropriately to occasional changes in the workplace. She can have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training. She can engage in frequent interactions with coworkers and the general public.

(Tr. 23-24). The ALJ explained that in considering Tina C.'s symptoms she followed a two-step process. (Tr. 24). First, she determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Tina C.'s pain or other symptoms. (Tr. 24). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the

3

extent to which they limited Tina C.'s functioning. (Tr. 24).

After considering the evidence, the ALJ found that Tina C.'s medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. (Tr. 25). However, the ALJ concluded that Tina C.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25).

At step four, the ALJ determined that Tina C. had been unable to perform any past relevant work. (Tr. 28). Considering Tina C.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could have performed, including final assembler (17,000 jobs nationally), document preparer (125,000 jobs nationally), and address clerk (10,700 jobs nationally). (Tr. 29-30). The ALJ found that Tina C. was not under a disability within the meaning of the Social Security Act from June 7, 2015 through December 20, 2018, the date of the unfavorable decision. (Tr. 30).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion." ***Zoch v. Saul***, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); ***Biestek v.***

*Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Bates*, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**.  If she is, the claimant is not disabled and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and

mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled.  **20 C.F.R. § 404.1520(e)**.  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Tina C. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits.  In her appeal, Tina C. argues that: (1) the Appeals Council committed reversible error in failing to evaluate new and material evidence; and (2) the ALJ relied on stale opinions of the state agency consultants in assessing her physical and mental impairments which resulted in a RFC that was unsupported by substantial evidence or the relevant legal standards.

First, Tina C. argues that the Appeals Council committed reversibly error by failing to evaluate new and material evidence.  Specifically, she claims that the Appeals Council improperly concluded that the additional evidence submitted was not new and material to her claim for disability benefits.  The "new and material" evidence that the Appeals Council failed to evaluate consisted of additional treatment for her left shoulder condition by Dr. Brian Ratigan, M.D.  In response, the Commissioner claims that Tina C.'s argument is based on an outdated,

obsolete regulation [2], and even if Tina C. had cited the correct authority, the Appeals Council cited the specific reason that it did not review the ALJ's decision, therefore it is not reviewable.

Under **20 C.F.R. § 404.970(a)**, the Appeals Council will review a case if, *inter alia*, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." A court can review the Council's decision to decline plenary review when the Council made a legal, rather than a discretionary decision. **Stepp**, 795 F.3d at 722. If the Council did not find the additional evidence new and material, and thus deeming the evidence "non-qualifying under the regulation," the court can review that decision for legal error. **Stepp**, 795 F.3d at 722 (quoting **Farrell v. Astrue**, 692 F.3d 767, 771 (7th Cir. 2012)). However, if the Council found the additional evidence new, material, and time-relevant but denied review because the ALJ's decision was not "contrary to the weight of the evidence," then its decision was "discretionary and unreviewable." **Stepp**, 795 F.3d at 722 (quoting **Perkins v. Charter**, 107 F.3d 1290, 1294 (7th Cir. 1997)).

In declining to review the ALJ's decision, despite Tina C.'s newly submitted evidence, the Council stated the following:

> You submitted records from South Bend Memorial dated October 28, 2018 to January 4, 2019 (15 pages) and South Bend Orthopedics dated May 18, 2018 to March 27, 2019 (30 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(Tr. 2). Tina C. argues that the Council never specifically discussed the contents of the new

---

[2] Tina C. cited to 20 C.F.R. § 404.970(b) which was revised on December 16, 2016. The revision changed the requirement that once the Appeals Council found the new evidence to be new, material, and related to the period on or after the date of the ALJ decision, from then reviewing the case if it found that the ALJ's action was contrary to the weight of the evidence to reviewing the case if "there is a reasonable probability that the additional evidence would change the outcome of the decision." § 404.970(a)(5).

records regarding the adjudicated period, therefore the Council's decision to decline review was so ambiguous that it could be interpreted as a finding that the evidence submitted is not "new and material" under § 404.970(b).

In *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012), the Seventh Circuit found the Council's decision that it had "considered … the additional evidence … [and] found that th[e] information d[id] not provide a basis for changing the [ALJ's] decision" to be a boilerplate denial that "often appears in orders of Appeals Council rejecting plenary review …" The Seventh Circuit went on to explain that this boilerplate-like denial, "[o]n the one hand, [] might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it to be insufficient to require a different result." 693 F.3d at 771. In *Stepp*, the Seventh Circuit found that "without more specific language from the Council, we interpreted the denial notice to imply the former conclusion – i.e. that the Council 'rejected Farrell's new evidence as non-qualifying under the regulation.'" *Stepp*, 795 F.3d at 723.

Alternatively, in *Perkins v. Charter*, 107 F.3d 1290, 1292 (7th Cir. 1997), the Seventh Circuit found that the Council "specifically address[ed] the content and persuasiveness of [the additional evidence]," therefore "the Council must have accepted that evidence as new and material under the regulation" and so "the Council's unfavorable decision was therefore 'discretionary and unreviewable.'" *Stepp*, 795 F.3d at 722-23.

Here, the Council used the same boilerplate language that the Seventh Circuit found insufficient. (Tr. 2). Therefore, this court will interpret the boilerplate language as a rejection of the additional evidence as non-qualifying under the regulation. That finding requires the court to review the Council's rejection of the additional evidence as new and material *de novo*. *See Stepp*,

8

795 F.3d at 722 (finding that "[i]f the Council determined [the claimant's] newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence 'non-qualifying under the regulation,' we retain jurisdiction to review that conclusion for legal error").

The Commissioner's argument that the Council's notice "presuppose[d] a finding on the issue of whether the evidence was new and material" because "if the Appeals Council had found that the evidence was not new and material, it would not have reached the question of whether the evidence showed a reasonable probability that it would change the outcome of the decision," is exactly what the Seventh Circuit is trying to avoid. Accordingly, this court reaches the same conclusion as the Seventh Circuit did in *Stepp* in that it "cannot conclude that these abstruse signals, without more, demonstrate that the Council considered [Dr. Ratigan's] treatment notes."

A record is considered "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Perkins*, 107 F.3d at 1296. Tina C.'s hearing was held on August 15, 2018. The additional medical records, completed by Dr. Rankin, are dated October 28, 2019 through January 4, 2019, as well as May 18, 2018 through March 27, 2019. The records dated August 2018 through March 2019 were created subsequent to the hearing, with a significant amount being created after the ALJ's December 10, 2018 decision. *See Stepp*, 795 F.3d at 725 (reminding that "medical records are not instantaneously transmitted from treating physician to the Social Security Administration upon their creation; rather, a claimant's representative must learn that specific treatment has been provided, request the relevant treatment notes, obtain them from the physician, and deliver them to the agency"). Additionally, the Commissioner agrees there were "multiple new records in [Tina C.'s] submission to the Appeals Council," with the exception of a May 2018 record. Therefore, Dr. Rankin's treatment

notes are new within the meaning of **§ 404.970(b)**.

Next, additional evidence is considered "material" under **§ 404.970(b)** if it "creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." ***Stepp***, 795 F.3d at 725 (internal quotations and citations omitted). The additional treatment notes provided by Tina C. reflect that on October 29, 2018, a physical exam revealed positive Hawkin's and Neer's testing, a reduced range of motion with pain, and scierosis of the left rotator cuff footprint requiring an MRI. (Tr. 46). On January 4, 2019, an operative procedure took place on Tina C.'s left shoulder rotator cuff tear with impingement. (Tr. 47). The description of the procedure included intact subscapularis tendon, biceps tendon, and normal glenohumeral articular cartilage, however "there was obvious tearing on the undersurface noted on the supraspinatus insertion." (Tr. 46-47). The notes also provided that Tina C. saw Dr. Ratigan for a "recheck" 12 weeks after surgery. (Tr. 83). There, Dr. Ratigan noted that Tina C. "should have a little more motion than what she has, but she does not have a frozen shoulder." (Tr. 86). He recommended "therapy 3 times a week," "stretching many times a day," and "if she is still complaining of being stiff … [he will] determine if … proceeding with a manipulation under anesthesia" would be necessary. (Tr. 86).

In her decision, the ALJ stated "medical records documented a history of bilateral shoulder pain, but the evidence presented does not contain objective medical evidence to support greater exertional and upper extremity limitations … [I]n April 2018, she began seeking treatment for left shoulder pain … although x-rays of her left shoulder were unremarkable, physical examinations indicated pain and reduced range of motion of the left shoulder." (Tr. 26). The ALJ concluded, "nonetheless, there [wa]s no evidence that she had tried cortisone injections or physical therapy for this pain." (Tr. 26). The additional evidence included a Kenalog injection

on May 18, 2018 to treat Tina C.'s impingement syndrome of the left shoulder. (Tr. 109).

Additionally, Tina C. completed physical therapy for her left shoulder on or before October 29, 2018, as reflected in Dr. Ratigan's notes. (Tr. 46). Dr. Ratigan recommended additional physical therapy on March 27, 2019. (Tr. 86). Most importantly, the additional evidence contained the new left rotator cuff tear diagnosis that was not available to the ALJ when she made her decision. (Tr. 47). The court recognizes that the ALJ did make mention of a "left shoulder injury" in her decision, however the left rotator cuff tear diagnosis as well as the necessary surgery, occurred subsequent to the decision. The new diagnosis, alone, represents a reasonable probability that the ALJ's decision could have been different. Additionally, based on the ALJ's decision, the therapy and injection also could have led her to a different conclusion.

Given the new diagnosis, physical therapy, injection, and lack of reported improvement reflected in the additional evidence Tina C. provided to the Council, the court rejects the Commissioner's blanket statement that the newly-submitted evidence added no new information to the record and concludes that the Council erred in failing to find the newly submitted evidence as "new and material" pursuant to **§ 404.970(b)**.

Tina C. makes an additional argument regarding "stale" opinions of the state agency consultants. However, since the Council erred in denying review, the court need not address the additional arguments at this time. The ALJ will have the opportunity to revisit this other issue on remand.

Based on the foregoing reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court.

The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***Willis v. Caterpillar, Incorporated***, 199 F.3d 902, 904 (7th Cir. 1999); ***Johnson v. Zema Systems Corporation***, 170 F.3d 734, 739 (7th Cir. 1999); ***Hunger v. Leininger***, 15 F.3d 664, 668 (7th Cir. 1994); ***The Provident Bank v. Manor Steel Corporation***, 882 F.2d 258, 260-61 (7th Cir. 1989); ***United States v. Johnson***, 859 F.2d 1289, 1294 (7th Cir. 1988); ***Lebovitz v. Miller***, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 10th day of May, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge